286 So.2d 720 (1973)
Doreen G. ULM, wife of Donald A. Ulm, for the Use and Benefit of his minor child, Jerri Ann Ulm
v.
Earl L. GITZ et al.
No. 5697.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied January 8, 1974.
Writ Refused March 1, 1974.
Plotkin & Bradley, Steven R. Plotkin, Owen Bradley, New Orleans, for plaintiffs-appellees.
Porteous, Toledano, Hainkel & Johnson, New Orleans, James L. Donovan, Metairie, for defendants-appellants Earl L. Gitz and Aetna Ins. Co.
Drury, Lozes & Curry, Rene A. Curry, Jr., New Orleans, for defendants-appellees Archdiocese of New Orleans and St. Mary's Roman Catholic Church of the Parish of Orleans and defendants-appellants The American Employers' Ins. Co.
Before BAILES, FLEMING and BRADLEY, JJ. Pro Tem.
*721 JULIAN E. BAILES, Judge Pro Tem.
This is a suit to recover damages resulting from a collision between a bicycle ridden by plaintiffs' daughter and an automobile owned and driven by Earl L. Gitz.
The jury returned a verdict in favor of the plaintiffs and against all defendants, in solido. From the judgment rendered by the trial court conforming to the jury verdict some of the defendants have appealed.
We find the jury committed error of law in holding against the appellants. Accordingly, we reverse.
The plaintiffs are Mrs. Doreen G. Ulm and her husband, Donald A. Ulm, who sue to recover lost wages and medical expenses, and Mr. Ulm seeks recovery of damages suffered by the daughter, Jerri Ann Ulm, by reason of physical injuries sustained in the accident.
The defendants are Earl L. Gitz and his public liability insurer, Aetna Insurance Company; American Employers Insurance Company, insurer of the Archdiocese of New Orleans; Raymond J. Toups, father of Raymond J. Toups, Jr.; and Carlos Malespin, father of Gus Malespin.
Judgment in solido was rendered against all these defendants, however Raymond J. Toups and Carlos Malespin did not appeal. Consequently, the judgment of the trial court is final as to them.
The Archdiocese of New Orleans, the Congregation of St. Mary's Roman Catholic Church and Liberty Mutual Insurance Company were dismissed as defendants prior to trial and are no longer parties hereto.
On the day school ended for the year 1969-70, May 29, 1970, about two hours after classes were dismissed, Jerri Ann Ulm, then 12 years of age, rode her bicycle through the enclosed yard of Mater Dolorosa School as a short cut to a nearby store. On this occasion, two young male classmates of Jerri Ann, Gus Malespin and Raymond Toups, were in the school yard. In a manner of teasing Jerri Ann these boys succeeded in taking Jerri Ann's bicycle from her, and Gus Malespin rode it about the yard for a few minutes. On the imploring of Jerri Ann her bicycle was returned to her whereupon the boys, as Jerri Ann sought to continue her trip, made threats to take the bicycle again.
At a point approximately five or six feet from the gate adjacent to Dublin Street, Gus Malespin, then at the rear of the bicycle, pushed it into the street. In this maneuver Jerri Ann had no control over the movement of the bicycle and she rode it down the sloping driveway into the street, a distance of ten to twelve feet from the point where it had been propelled by Gus Malespin.
At this same time, defendant, Earl L. Gitz, accompanied by his wife, was driving at a speed of about 15 mph on Dublin Street proceeding from Oak Street to Plum Street.
The evidence shows that the school yard was to Mr. Gitz's right as he proceeded from Oak to Plum where cars were parked along Dublin Street to Mr. Gitz's right, which partially obscured view of the school yard. Upon seeing the child pushed toward the street, Mr. Gitz, as quickly as possible, applied his brakes and stopped his car. It appears Jerri Ann and her bicycle struck the right front of the Gitz vehicle. After the impact, both Jerri Ann and her bicycle were in front of the automobile.
At the time of the accident, Miss Jean Dufour was walking on Dublin Street toward Plum Street. She did not see the Gitz car until the accident occurred as it was approaching her from the rear. She testified that cars lined both sides of the street and were parked up to the driveway.
Miss Dufour saw the two boys around the bicycle, and at this time Jerri Ann was on the bike. She estimated that the group was about five to six feet from the gate. The two boys were teasing Jerri Ann when she heard one of them say, "Let's give her *722 a big push." She couldn't identify the boy that pushed Jerri Ann, however, she stated that when they pushed her, Jerri Ann lost control and rolled into the street. Upon the boys pushing the bicycle, Miss Dufour testified that she heard the screeching of brakes and the accident occurred.
We are convinced from the evidence that the sole proximate cause of this accident was the negligent conduct of the boys in pushing Jerri Ann's bicycle from the school yard into the street in front of the Gitz automobile. Further, we find from the evidence that Mr. Gitz was guilty of no actionable negligence. He had no notice of the untoward conduct of these two boys in sufficient time to have taken other evasive action to avoid striking Jerri Ann.
Plaintiffs argue that Mr. Gitz's observing the children in the school yard should have been warning enough for him to expect or to be prepared to reasonably cope with some sudden or immature act on the part of any of these children.
To the contrary, we find there was nothing in the conduct of these children, assuming arguendo, that they were at all times fully within his view, to put Mr. Gitz on notice that Jerri Ann would be suddenly pushed from the high fenced school yard through the open gate into the street immediately in front of him.
Such action of the children, and the plaintiffs' argument point up the applicability of the doctrine of sudden emergency. Mr. Gitz's action was fully that of a careful prudent driver. He instantly applied his brakes and stopped within the distance of a few feet, regrettably, however, he was unable to stop prior to impact with Jerri Ann and her bicycle.
Of course, Mr. Gitz was under a duty to observe the area through which he was driving and is held to have seen that which by the use of ordinary care and prudence he should have seen, however, he had no reason from the observed conduct of these children in the playground to anticipate that the child on the bicycle would be suddenly pushed from the playground into the street in front of his automobile. See: Campo v. Vampran, La.App., 183 So.2d 57 (1st Cir. 1966). From the time he had notice that the child might enter his path, he was under the highest degree of care to avoid injuring her. This he did without avail.
Plaintiffs rely on the cases of Woods v. Cappo, La.App., 232 So.2d 578 (1970) and Sutton v. Rogers, La.App., 222 So.2d 504 (1969).
First, it must be understood that a motorist is not an insurer of children who suddenly appear in the path of the motorist. For liability to attach there must be an actionable violation of a duty owed to the child by the motorist. See: Ward v. Southern Bell Telephone & Telegraph Co., La.App., 189 So.2d 750 (1st Cir. 1966).
In Woods v. Cappo, supra, the children were observed engaging in "horseplay" while crossing a street. The court found that the motorist was negligent in failing to keep his vehicle under such control as to be able to respond immediately to any impulsive action on the part of the children. Woods v. Cappo is not a case of a child suddenly darting into a perilous position.
In Sutton v. Rogers, supra, the facts are so different to instant case as to make the holding inapposite. In this cited case the court found the motorist negligent, after he observed two of three children cross the street, in failing to anticipate that the third child would probably follow his companions and in not taking necessary precautions to prevent injury to such child. This cited case has no application here.
Additionally, plaintiffs argue that Mr. Gitz was legally blind and unable to see what he should have seen. The facts are that Mr. Gitz did have a sight problem and was under the care and treatment of an eye doctor. This doctor testified that Mr. Gitz was fully capable of driving his car *723 with safety to other people. We find no causal connection between the sight problem and this accident.
Plaintiffs urge a finding of negligence against the Archdiocese of New Orleans on the theory that as the school yard was open to the public there was an implied invitation to Jerri Ann to enter, and as an invitee the Archdiocese had the duty to exercise reasonable care for her safety. Further they argue that as the principal of the school had knowledge that children played in the school yard daily after school such knowledge placed the school on notice that some type of supervision was required. No jurisprudence is cited to support this argument.
There is no causal relationship between the negligent action of the two boys and lack of supervision of the school yard by the school.
Responsibility of the Archdiocese of New Orleans to the plaintiffs for the injuries of Jerri Ann must be grounded in the breach of a duty owed to Jerri Ann.
There is no duty on a school to supervise a school yard after school hours or during vacation time. Even assuming, arguendo, that there was a duty on the school to supervise the school yard during vacation time, there is no showing that the presence of a supervisor might have prevented the boys from pushing Jerri Ann out the gate into the street.
LSA-C.C. Art. 2320 has no application to the facts of the instant case. This Article provides:
"* * *
"Teachers and artisans are answerable for the damages occasioned by their scholars or apprentices, while under their superintendence.
"In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it."
We find no case which holds that a school is obliged to supervise its playground when the school is not in session. There is no attractive nuisance or trap involved herein.
There was no duty on the school to supervise the school yard nor any reason to bar or prohibit children from entering the yard, and we conclude there is no negligence on the part of the Archdiocese of New Orleans.
For the reasons assigned the judgment in favor of plaintiffs and against Earl L. Gitz, Aetna Insurance Company, and American Employers Insurance Company is reversed, annulled and set aside and the plaintiffs' demands against these named defendants are dismissed at plaintiffs' cost.
Reversed.