261 So.2d 699 (1972)
Ralph JOHNSON, In His Own Behalf and Behalf of His Minor Daughter, Brenda Johnson
v.
ORLEANS PARISH SCHOOL BOARD.
No. 4980.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 1972.
Bruce W. Dinwiddie, Stanley J. Jacobs, of Ungar, Dulitz, Jacobs & Manuel, New Orleans, for plaintiff-appellee.
Patrick M. Reily, of Polack, Rosenberg & Rittenberg, New Orleans, for defendant-appellant.
Before REGAN, STOULIG and BOUTALL, JJ.
REGAN, Judge.
The plaintiff, Ralph Johnson, filed this suit individually and as administrator of the estate of his minor daughter, Brenda Johnson, against the defendant, the Orleans Parish School Board endeavoring to recover the sum of $25,000 for bodily injuries sustained by his daughter and for medical expenses which he contends were caused by the negligence of the School Board in permitting a cracked glass window to exist in a hallway of the Helen S. Edwards Elementary School.
*700 The defendant filed a peremptory exception predicated upon its governmental immunity from liability in tort, after which the plaintiff obtained the passage of Act 657 of 1968, effective as of July 31, 1968, authorizing this suit against the School Board. Thereafter, the defendant's exception was overruled, and the School Board answered denying the existence of fault on its part and then asserted that the injuries incurred by the plaintiff's daughter were caused entirely by her own negligence.
After a trial on the merits, the lower court rendered judgment in favor of the plaintiff in the amount of $2700, and from that judgment the defendant has prosecuted this appeal.
The record discloses that on May 9, 1967, the plaintiff's daughter, Brenda Johnson, was a 13 year old student matriculating in the seventh grade of George Washington Carver Junior High School in Orleans Parish. At approximately 2:20 p. m., her class was escorted across the street to the cafeteria of the Helen S. Edwards Elementary School in order to view an art exhibit. The class was instructed to assemble in a hallway outside the cafeteria after viewing the art exhibit in order to return as a group to the Edwards School. On the side of the hallway opposite the cafeteria were several quarter-inch thick plate glass windows measuring approximately four feet in width by seven feet in height.
Something apparently happened to the support of Brenda's stockings, causing them to fall. She and a companion testified that when she was endeavoring to adjust her hose she struck the plate glass window which was about a foot away.
The window had several cracks in it, which were repaired, according to the defendant's records, on January 7, 1967, by placing tape over the cracks in order to reinforce the glass.
The repair was requisitioned on December 20, 1966, and approved by the Superintendent of the Orleans Parish School Board on January 7, 1967, with the notation appearing thereon, to the effect that, because of previous breakage caused by vandalism, some more durable material should be found for use as a substitute for the glass. In view of these contemplated structural revisions, the glass was taped but was not replaced.
The testimony of a glazer, whose appearance was requested by the defendant, revealed that on many occasions damaged glass would be taped and permitted to remain in that condition for a period of years until it could be replaced, provided the damaged glass was firm in its mounting supports.
The defendant insists that the plaintiff's daughter was guilty of contributory negligence since she knew that the plate glass was cracked but nevertheless leaned against it when she endeavored to adjust her stocking. However, a fair evaluation of the uncontradicted testimony of the plaintiff's daughter and of Cynthia Alexander, one of her classmates, establishes by a preponderance of the evidence that the glass collapsed when Brenda's elbows struck it while she was adjusting her stocking. She was standing with her back to the plate glass window, and as she adjusted her stocking, her elbows passed beyond the vertical plane of her back and struck the window, precipitating its collapse around her arms which resulted in the injuries which form the subject matter of this suit.
The defendant knew that the window was broken and had it taped as a temporary precautionary measure. However, to permit a window as large as this one to remain in such condition for a period of four months in an area where children are known to frequent is certainly indicative of negligence on the part of defendant.
The lower court found as a matter of fact that the defendant was at fault in permitting the cracked window to remain taped and the facts inscribed in the record *701 do not disclose that it committed manifest error in reaching this conclusion.
The record also reveals that the lower court did not err in reasoning that the plaintiff's daughter was not at fault. To reiterate, the evidence shows that the Johnson child, while standing with her back to the plate glass window, adjusted her stocking and struck the window with her elbows. The defendant did not prove that the child knew of the dangerous condition, had been warned thereof, or did anything unusual or extraordinary to cause her own injuries. In short, the defendant did not bear the burden of proving Brenda's contributory negligence, and we find no evidence in the record to substantiate this defense.
The defendant argues that Act 657 of 1968, which specifically waived the School Board's immunity from suit and liability cannot be applied retroactively to this case since no new suit was filed after the passage of this Act. Suit was filed on April 5, 1968, and the defendant filed its peremptory exception on April 23, 1968. Thereafter Act 657 became effective on July 31, 1968, and it was only after the passage of the Act that the defendant's exception was overruled. It was obviously the intent of the Legislature to authorize the present suit, since the legislative enactment was passed after the institution of the suit and after the plea of governmental immunity was made by the defendant in response thereto. The defendant's exception was heard after the legislative enactment cured the defects pleaded thereby. If the defendant's exception had been heard and sustained before the legislative enactment was passed, the plaintiff would then have been obliged to file a new suit after obtaining legislative authority to do so.[1] To require the plaintiff in this case to file a new suit would be merely ordering him to perform a vain and useless act which we are not inclined to do.
The defendants alternatively argue that the award of $2700 to the plaintiff was grossly excessive and should be reduced. The medical evidence adduced herein consists of Brenda's record at Charity Hospital in New Orleans and a report, stipulated into the record by the School Board's physician, Dr. Neal Owens. The injuries consist of a crescent shaped scar on the right posterior forearm, four centimeters long, wide and somewhat raised. Suture marks were visible by Dr. Owens on August 21, 1967. The second scar was a transverse scar just above the right wrist, three centimeters in length and unraised. In addition, there was a scar on her left forearm three centimeters in length and one and one-half centimeters wide.
Dr. Owens advised that these scars be excised and further recommended surgical revision thereof. He estimated that the physician's fee for such a surgical procedure would be $400 and that the surgery would require hospitalization for a period of five days to one week at an approximate cost of $350 to $400. In view of the fact that the plaintiff is a young female, the cosmetic damage and effect of the scars cannot be overlooked. She testified that these scars caused her some pain and discomfort up to the time of the trial, approximately four years after the accident, and her mother confirmed these complaints. In view of future medical bills amounting to $800, the pain and suffering endured and the fright involved in being rushed to Charity Hospital with uncontrolled bleeding, together with the resultant scaring and the prospect of a week's confinement in a hospital for surgical removal of the scars, the award of $1900 to the plaintiff's daughter for her injuries was not an abuse of the trial court's discretion.[2]
The final argument made by the defendant is that the Orleans Parish School Board, as an agency of the State of *702 Louisiana, is not liable for court costs with the exception of stenographer's fees in accordance with R.S. 13:4521. A cursory reading of this statute convinces us that the defendant's contention is correct, and the lower court's judgment will be amended accordingly.
For the foregoing reasons, the judgment of the lower court is hereby amended by assessing costs in conformity with R.S. 13:4521. In all other respects, the judgment appealed from is affirmed.
Amended and affirmed.
NOTES
[1] See Whitfield v. East Baton Rouge School Board, La.App., 23 So.2d 708 (1945).
[2] See Farris v. New Orleans Public Service, Inc., La.App., 242 So.2d 335 (1970).